CROSS, ADMR. *v.* FROST

No. 40094 April 2, 1956 86 So. 2d 296

456

*L. W. Brown,* Starkville; *Holloman & Threadgill,* Columbus, for appellant.

*Carter & Van Every,* Columbus, for appellee.

LEE, J.

About 1:00 o'clock on the morning of April 24, 1954, a collision occurred between two automobiles in the intersection of U. S. Highway 45, running north and south, and a gravel road, running east and west, in Lowndes County. O. C. Frost, driving a Pontiac, was proceeding north on the highway, and J. M. Cross, driving a Plymouth, was travelling east on the gravel road. Cross was killed instantly and Frost received serious personal injuries.

Suit was filed by Frost against the Cross Estate to recover damages for his personal injuries. The Estate, in its answer, denied the allegations of the declaration, and filed a cross claim against Frost for the recovery of property damages and for the death of the decedent. The jury returned a verdict for the plaintiff in the sum of $5,000.00. The Estate appealed.

Several witnesses, including a patrolman, who went to the scene shortly after the occurrence, agreed that the highway was straight and level; that stop signs, about 50 feet from the center, were on both sides of the highway, warning motorists on the gravel road to stop before entering the highway; that the pavement was 20 feet wide; that the front end of the Pontiac struck the Plymouth "broadside" about the middle of the east lane of traffic; and that the Pontiac stopped from 25 to 40 feet north of the point of impact, and the Plymouth was 35 to 50 feet farther north.

Over the objection of the defendant, based on Section 1690, Code of 1942, the plaintiff himself testified that "this car ran out in front of me on the highway", and as to the distance from the intersection when he saw the Plymouth. Photographs of the scene and the dam-

aged cars were introduced as exhibits to his testimony. In addition, he testified in great detail about the nature and extent of his injuries.

E. D. Hardin, the only eyewitness other than the plaintiff, testified that he was travelling north in a car 3 to 5 lengths behind the Pontiac; that he was driving between 50 and 60 miles an hour; and that the Plymouth came from the west on the gravel road into the intersection without stopping or slowing down. He was of the opinion that the Pontiac skidded only 3 to 5 feet before the impact.

The patrolman Cheek testified that he saw faint skid marks, made by the Pontiac, extending for a distance of 12 to 15 feet immediately south of the point of impact. James Shelton, who picked up the Frost car after the wreck, testified that the brakes had been applied.

■■ The appellant urges here that the admission of the testimony of the plaintiff constituted reversible error. We agree with that contention.

The applicable part of Section 1690, Code of 1942, is as follows: "A person shall not testify as a witness to establish his own claim or defense against the estate of a deceased person which originated during the lifetime of such deceased person, or any claim he has transferred since the death of such decedent. * * *"

■■ As early as 1860, this Court, in the case of Lamar, et al v. Williams, 39 Miss. 342, in construing the so-called "dead man's statute", which, in its material aspects, was the same as it exists today, held that it applied not only to fixed debts but also in actions of tort. A slave of Williams was severely beaten by Lamar and Kersh, in an effort to extort from him information about a run-away slave. Williams brought suit to recover for the damage. However, before the trial, he died, and the cause was revived in the name of his administrator. Lamar and Kersh, after the close of the plaintiff's case, were offered as witnesses in their own

behalf to prove that Williams gave them license to whip his slave, and that the punishment was not excessive. But the trial court held that these defendants were incompetent witnesses. On appeal here, they maintained that they were not trying to establish a claim against the Estate of the decedent. The Court however rejected that contention and observed that, if a claim was to be interpreted in the sense of a fixed debt, then "a plaintiff in any action ex delicto against the estate of a decedent, the cause of which had accrued in his lifetime, or for the recovery of a specific chattel, would have the right to testify in his own behalf; and any defendant sued by the representatives of a decedent for a cause of action which accrued in the decedent's lifetime would be authorized to testify to anything which would avoid the damand, such as payment to the decedent, set-off, non est factum, and the like, because that would not be to set up any 'claim' against the estate. But this is clearly in contravention of the policy of the statute, as it has been recognized by us in the case of Griffin v. Lower, 37 Miss. R. 458. The spirit and policy of the proviso appear clearly to be, that a living party, either plaintiff or defendant, in an action in which the representatives of a decedent's estate are a party, shall not be competent to testify in his own behalf to establish his demand or right, asserted and relied on in the action, against the estate, if the matter exceed the sum of fifty dollars; because an undue advantage would thereby be given to the living party, by enabling him to testify to matters which took place between him and the decedent, and which, resting entirely in the private transactions of the parties, could not be disproved or explained by reason of the death of the other party." The rationale of that decision was adhered to in Witherspoon v. Blewett, 47 Miss. 570; Rothschild v. Hatch, 54 Miss. 554; Whitehead v. Kirk, 104 Miss. 776, 61 So. 737; Brown v. Parker, 143 Miss. 291, 108 So. 492.

In 58 Am. Jur., Witnesses, Sec. 223, p. 151, it is said: "Statutes with reference to the competency of a party to testify to transactions with deceased persons are generally regarded as applicable to actions ex delicto." In Section 228, p. 153 thereof, it is also said: "The statute disqualifying parties, etc., to actions on claims or demands against an estate is applicable to an action against an estate to recover money, including an action against an estate for damages for a tort. * * *."

 █ Because of the salutary provision of Section 1690, supra, this Court will not countenance its repeal by judicial legislation.

It is deemed unnecessary to respond to appellant's other assignments, as they will likely not recur in another trial.

Reversed and remanded.

*Roberds, P.J.,* and *Hall, Holmes* and *Ethridge, JJ.,* concur.